Good morning, Your Honors. May it please the Court, Counsel. My name is Joanna Christensen and I represent the appellant in this matter, Deangelo Dixon. I'm also here with my students, and I have two issues before the Court this morning that I'm going to argue. The Brady violation and then the dangerous weapon provision under 2113d. As far as the Brady violation, the district... How was there a Brady violation, Counsel, when the information was revealed during trial? The Brady violation was that it was revealed not through disclosure by the government, but simply by defense counsel's questioning. But who cares? The holding of This information came out during trial, and that ought to be the end of things. I don't think... Your whole brief is premised on the idea that Brady requires pre-trial disclosure. Not necessarily pre-trial. That's not... That's what your brief keeps saying, that it wasn't disclosed before trial. Certainly, before trial would have been more advantageous. But Brady doesn't require pre-trial disclosure. Exactly. We don't necessarily say it requires it. However, it does require disclosure. The government states Brady is a rule of disclosure, not discovery. Who cares? The Brady doctrine also is that the government has to bring up things the defense doesn't already know. The defense knows them, and the government never discloses them. There's been no violation of Brady. The defense did not know. The rule of Brady is that it violates the due process clause for the trial to conclude without exculpatory evidence known to the government coming out. That didn't happen. I don't see what the problem is. The problem is for defense counsel. Defense counsel cannot be charged to discover the Brady information that the government is not disclosing. That's not the duty of defense counsel. And that's essentially what happened here. If the trial counsel in this case had not asked the question the way it was asked, and the witness had not volunteered... Yes, but counsel did. The information came out. As I say, the holding of Brady is the defendant is entitled to certain information before the end of trial, and the defendant got the information before the end of trial. What's the problem? The problem is the manner in which it occurred. That we believe... Right, and that's your brief. Your problem in your brief is that it didn't happen before trial. And then you encounter the holding of U.S. against Ruiz that Brady does not require pretrial disclosure. I understand our brief focus on require pretrial, and the government argues that. Pretrial would always be preferable. However, it does require disclosure by the government, and there was no disclosure by the government in this case. Let me ask this question in a different way. Are you arguing that the prosecutor violated a Rule 16 discovery order? Yes. That's not in your brief. I looked in your brief to see if there was an argument based on that. But I couldn't find it in your brief. So, you say you're arguing it. Where can I find that argument? Well, I guess we didn't argue it in the brief. You're right, Your Honor. It's a Brady bias. Well, then you're not arguing it. If you didn't make an argument in the brief, you didn't make it. I was asking it to see if I misread your brief or unable to find it or something like that. No, that's not the case. When you answer yes, it leads me to think I've missed something in your brief, but apparently no. I guess I apologize. Our argument is a discovery disclosure argument regarding Brady. I apologize. Right. So, why didn't you make a Rule 16 argument rather than a Brady argument? You might have a serious Rule 16 argument. You don't have a serious Brady argument. The Rule 16 argument was not raised below. Oh, well, that's a problem. And when making an argument in front of this court, of course, I've always got to make the arguments that first were preserved. Of course, we do occasionally raise arguments that were not preserved, usually not over arguments that were. So, when we're looking at the record in this case, the objection that was made to the evidence coming in was a Brady objection that it was not disclosed by the government. Right, but either way, there's a prejudice problem here because once this information about the VP having been shown the photo before trial came out, she was never recalled by the defense to impeach her with that, you know, impeach her in court sort of identification. She didn't really issue an identification or testify that the defendant is the guy. She said he looks like the guy. So, there isn't a non-dunk identification to be impeached, but there's a quasi-identification to be impeached, and that was never even attempted once this information was disclosed. And after the fact, the judge did an admissibility hearing, right, and said that the quasi-ID was admissible because it was reliable, even if the show-up was suggestive. So, I mean, I just don't see the prejudice here. It would have come out the same way even if there had been a full pre-trial disclosure, whether pursuant to Rule 16 or Brady. Right. If there had been a pre-trial disclosure, though, and I'll answer the first part of your question first. I think the reason it wasn't used in impeachment was perhaps because the district court, after the motion for mistrial was made, originally I think it shocked trial counsel, and he did not use it at that point. But when the motion for mistrial was made, the judge immediately denied it and essentially closed the issue. Well, that didn't cut off impeachment with this information. All it did is say there's no grounds for mistrial. Right, and so defense counsel did not recall Mrs. Wicker. Could have. Could have, and the government suggested that, but I think at that point, perhaps furthering the misidentification would have been more harmful than not, which is why a motion to suppress would have been appropriate because it was a prejudicial, unduly suggestive show-up. Right, but I'm suggesting that the judge's ruling on reliability is sound, and so there is no prejudice. I don't agree that it's sound. I don't think that that ruling on whether it's a reliable identification should stand, and of course we have to go through various hurdles to get to that ruling, but the end result is that it was a very short amount of time that she viewed him, that the judge said himself that he wouldn't allow his investigators to do them. Then she was paying attention, of course, we admit that, and she said she didn't identify him as positively as in other cases. She said that he had a high resemblance, and in a situation where she was one of two witnesses that had seen the robber's face, to be able to get that testimony suppressed by having this information beforehand, and this is why we have focused on the prior two, is that that would have been the preferable way to deal with evidence of this sort in this case, and we don't believe that the district court made the correct reliability determination under the biggest factors in this case. In addition, the other factors are the 14 months after the robbery was when government counsel showed her the photograph ostensibly to identify the earring, which as this court can see on page 47 of our appendix, is not identifiable from the photograph to begin with. So the reason for showing her this photograph is also suspect and should have been considered by the district court in making that mistrial, yes, mistrial and the motion for new trial decision. Regarding the butane lighter as a dangerous weapon issue, this is a little bit of an interesting issue because it's attempting to draw a fine line between what happens in a bank robbery. Counsel, before we spend too much time on that question, I have a question whether anything turns on the answer. It looks to me like your client was sentenced to life under 3559 C1A. And it looks like C1A requires a sentence of life whether the conviction is under 1330, sorry, 2113 D, the actual conviction, or 2113 A. Your argument about the gun would move the conviction from 2113 D to 2113 A. But so far as I can tell from looking at the actual sentencing statute, that would have no effect whatever on the sentence. Am I misunderstanding the shot of 2559 C1A? I don't believe so, Your Honor. Alright, so then what difference does it matter whether this was a gun? The sentence is the same either way. Well, the difference is in his conviction certainly. I mean, we can't just transfer a conviction from one statute to another. Yes, you can. 2113 A is a lesser included offense of 2113 D. And in any event, it just doesn't matter. It doesn't matter substantively whether it was a... It doesn't matter substantively. Your client was sentenced to a mandatory life term and the sentencing statute is not 2113. It's 2559 C. Correct. And under that statute, the mandatory life sentence is required for any violation. Any violation of 2113. It could have been 2113 C, possessing the proceeds. It just doesn't matter. I guess, Your Honor, I had not thought about it that way and it may in fact be true. However, it still is an element of the offense that we're arguing about in this case. You're arguing about something that as far as I can see has no effect whatever on the judgment. That's what we review. We review judgments. Correct. It does have an effect on the fairness of the trial, however. I do say I'm into my rebuttal time and I will reserve the rest of my rebuttal unless the Court has further questions. Okay. Thank you, Ms. Richardson. Mr. Allegro? Thank you, Your Honor. May it please the Court, my name is Donald Allegro. I'm counsel for the government. I was the lead trial counsel in the district court as well. Concerning the Brady violation, as we've argued, I concede that I should have turned this material over to the defense because of some faulty paradigm I had in my own head and the fact that I thought I had turned over everything that was relevant. I did not turn this material over. It was a mistake. Having conceded that, defense counsel did bring it out. It did come out. We had a hearing. There was no prejudice because nothing the judge said barred the defense from arguing and closing arguments that this woman's identification of the defendant was suspect because she had been exposed to this prior photo of the defendant coming out of Walmart. Incidentally, there was nothing in the record indicating that that was a defendant in the Walmart photo. We never got that far. I was trying to develop that he wore these earrings. Counsel says that the photo doesn't show the earrings. Well, there's various versions of this photo. The ones we were attaching to our briefs are significantly lower in resolution. We had electronic versions of this photo that had much more resolution. In any event, I wanted to show her the earrings and I wanted to draw out the fact that there was such a close similarity between this witness's composite sketch, which showed the left profile of the defendant when he left the bank, and the left profile that was shown in that Walmart photo. After asking her about the earring, I asked her that additional question, does that look like the man you saw leaving the bank? What I intended to do later on was connect up with my case agent, have him establish where did you get this photo from, government's exhibit 3G2. This is a photo we obtained from Walmart of the defendant leaving on November 9, 2012. That's what I had intended to do. It just didn't occur to me that when I showed her this photo during a pre-trial interview, that I was engaged in any kind of photo identification procedure. We had talked, counsel referenced a promise by me not to do these kinds of procedures, and she was right. I did tell the district court, I told the defense counsel, and I told my agents we are not going to show any photo arrays or lineups to these witnesses. But, it never occurred to me that showing her a photo, that I was engaged in such a procedure. But you asked her to make an ID based on that photo? I was not asking her to make an identification, your honor. You asked her, is this the guy? No, I asked her if he looked like, I asked her the secondary question after she gave her identification testimony about the defendant in court, I asked her if the man in the photo looked like the robber that she saw. That's what you asked her on the witness stand. What did you ask her before trial? The same question. Does this look like the man you saw robbing the bank? That's an ID question. I understand that. It was a mistake. It just didn't occur to me. I was thinking, again, I had a bad paradigm in my head. I was thinking or the other way of doing it, one photo at a time, with all the various admonitions. I mean, to me, I was pre-trying this witness. We always try to show exhibits to our witnesses. I had a computer on the table, and I'm just hitting the next key, next, next, next, and I'm going through photos. We had a whole series of photos involving that bank robbery that she could authenticate, and I got to that photo, and my co-counsel, it didn't occur to him either, it didn't occur to the FBI agent that we had done anything we had to disclose. Just in a way, further in a way, in mea culpa, I'll indicate that we turned over a lot of Brady material to the defense in this case. We turned over the material to them that was the foundation of their defense, that this individual named Parrish was the real bank robber, and it was a guy from central Illinois who was investigated in connection with some robberies, and we provided photos of him and the like. We also provided all the other information concerning anybody else who was investigated in connection with this robbery. I had the FBI search for anybody else who looked similar, who was African American, who had committed a bank robbery around this time in the area, and we turned over everything we had, but in any event, it's our contention that Judge Darrow handled this appropriately. There was no prejudice to the defense. Why the defense chose not to argue or try to undermine this witness's quasi-identification and closing argument by referring to the Walmart photo, I do not know, but they certainly had that opportunity, and Judge Darrow certainly did not preclude it. That was understood that that was going to happen. Do you agree that this was a three strikes case, regardless of whether the conviction was for armed bank robbery or just bank robbery? Absolutely, and I pointed that out in my brief. I said regardless of whether the robberies are armed or unarmed, these are qualifying serious violence felonies. The present offense, I'm not talking about the past offenses, I'm talking about these offenses. Yes. So the defendant doesn't have an opportunity to take himself out of the three strikes law by showing that no dangerous weapon was used? He has the opportunity under 3559 to present evidence to show that I believe the language is there was no threat of physical force or violence. Or no use of a dangerous weapon. Right. So it is relevant whether these butane lighters qualify as a dangerous weapon. That's what I'm trying to get at. Because the defendant tried to get himself out of the three strikes law? I guess that prong of it, yes, it would be relevant. But nonetheless, these are still robberies. And the evidence at trial was that there were various threats made by the defendant. I can't say that wasn't contested, the defendant contested everything, but that was not the basis of the Rule 29 motion. The basis of the Rule 29 motion was just that this was a butane lighter and was not a dangerous weapon. I'm looking at 2113D, this is very puzzling to me. It says whoever etc. etc. puts in jeopardy the life of any person by the use of a dangerous weapon or device. Now how could you put someone's life in jeopardy with this butane lighter? The McLaughlin case, which is the... Now I know what that says, but can that actually be reconciled with the statutory language? Putting in jeopardy? I believe it does, Your Honor, because... How would you put someone's life in jeopardy? Because if you pull out a simulated gun, a toy gun, a fake gun, and an off-duty law enforcement officer is in that bank and he decides, and you put it up to this woman's neck and he decides that he's got to open fire because you're about to execute this woman, there's going to be bullets flying around that bank. And you have put everybody's life in jeopardy. Why would there be bullets flying around? He'll shoot the robber. He'll try to shoot the robber. Then he doesn't have to have any trial in prison and all that stuff. It's my understanding that the premise for this language qualifying or this kind of situation qualifying under that language is that it elevates the danger by somebody coming in... Well, the McLaughlin case involves the unloaded gun. And I understand that, partly because sometimes people don't know that they've done this. But with a butane lighter, I don't understand... That's not an unloaded weapon. It's a cigarette lighter. So, how does that... I don't understand. That may frighten people. They don't know what it is. I understand that, but I don't see how it puts someone's life in jeopardy. Your Honor, if he came into the bank and he said to the teller, I'm going to burn you on the neck, where I have this thing, unless you give me money, I would agree with you. But he said, I'm going to shoot you. Five seconds where I'm going to shoot. He was using that as a weapon. Suppose he just puts his finger in his pocket. Some bank robberies do that. They put their finger in their pocket to simulate a handgun and say, hand me the money or I'll shoot you. Can he be convicted under 2113D? I would submit no. No, because the finger won't actually shoot, no matter what happens. It's a 2113A case for robbery by intimidation. Correct. Now, if the thing in the pocket, or in this case, in the bag, is as harmless as a finger, why would there be any difference? You've still got the intimidation from the appearance of the outside and the threat, but why is it a dangerous weapon if it's not more harmful than the finger? I believe the only way to reconcile your point with the law is that it's a matter of degree. Because to a reasonable person coming into that bank... You don't want to say reasonable person, because I began with the finger in the pocket. It's designed to make a reasonable person think that there is a gun in the pocket. But falsely, there is no gun in the pocket. So instead of the finger, we now have the cigarette lighter designed to make a reasonable person believe there's a gun in the pocket or the bag. But there isn't one. I'm asking why you say that, I'm sure quite correctly, that the finger is on the intimidation rather than on the gun side. Why isn't the cigarette lighter on the intimidation rather than the dangerous weapon side? Because, again, I don't think a reasonable person would open fire or engage in violence. It is part of my hypothetical that the reasonable person cannot tell whether the thing in the pocket or the bag is a finger or a cigarette lighter. So it can't, it just can't affect how the teller behaves. It can't affect how the guard behaves. It can't affect how anybody who might open fire behaves. That difference. It can't have that effect. It is part of my hypothetical that you cannot see what is in the pocket. You have to deal with the hypothetical as given. My point is that a person using deadly force has to have some degree of certainty before they use it. A finger in the pocket is not enough certainty. A note. A note says, I'm carrying a bomb. It's going to blow up in 20 minutes. We have those all the time and we always charge those under 2113A. Because there is no instrumentality involved. Because they're in intimidation. That's just the kind of thing that leads to my question. Why a cigarette lighter is different from the finger, or I have a bomb, or in Woody Allen's famous movie, take the money and run, I have a gub. Woody Allen hands the I have a gub note to the teller and then argues with the teller about whether he spelled gun correctly. You can have a note that's a lot scarier than a butane lighter. I agree, but nobody's going to open fire because of a note, Your Honor. Because they can't see it. Are you sure? Why do you say that? What if my note says, I have a bomb. It's going to go off in a minute. If somebody said that and they had... Or I have a bomb in my pocket and I'm going to press the button if you don't give me the money. And, Your Honor, if somebody said that and they had packs of things attached to them that looked like explosives, that would be a dangerous weapon. Why do they need anything attached to them? Because there has to be, I believe, under 2113D, some instrumentality involved. Okay, thank you very much, Mr. Ehrlich. Ms. Christensen, do you have anything to say? Thank you, Your Honors. I think regarding the three strikes and the interplay with 2113, it's something that I certainly missed in my brief, didn't think about until the court answered. If the court would like, we'd be more than happy to file supplemental briefs on the issue. It might be a good idea. At least two of us have asked that question. I think it is. The answer lies not just in 2559C1A, it also lies in the definitional clause of 2559C2F, Romanet I. Yes. And unfortunately, that was missed in our brief, and I didn't catch the government's reference to reply to it. We would certainly appreciate the opportunity to file supplemental briefing on that limited issue. I'll say a few things about the rest of that argument. Certainly, the argument that's made in our brief is essentially the hypotheticals that the court is asking about. Is that a butane lighter just does not instill fear any more than a match or two sticks, as we argued. Or at least this butane lighter wouldn't. If you look on Amazon, you'll find butane lighters that look much more like real guns. Absolutely. And Amazon has a wonderful item. It's a screwdriver that looks exactly like a nickel-plated revolver. Suppose somebody shows up in the bank and wields the nickel-plated revolver, and only the robber knows that what's under the barrel is a screwdriver rather than a bullet. Is that 2113D? I think that is closer to a toy gun because it's made to look like a gun. And I know I don't do it often, but you can find flasks that look like guns. You can find shoes that look like guns. It's amazing. Dog collar. I mean, you can find anything that looks like a gun. You can make a gun out of Legos. I think the issue is the display of such a gun or such an object, and we cannot include all possible objects. Well, I hate to extend my hypothetical, but suppose you've got a screwdriver that looks exactly like a snub-nosed revolver, and you put it in your pocket. And you point it at the teller. The teller can't tell what's in the pocket. It could be a finger. That's subsection A. It could be the screwdriver. It could be a real gun. What happens? Is it 2113A or 2113D? I believe it's subsection A. It's concealed. Nobody has any idea. Now I want to ask you the reverse of the question I asked to the prosecutor. Suppose what's in the pocket is actually a fully operable handgun, but the teller never sees it. There's no instilling of fear. So you don't think that violates? Of course there's an instilling of fear. That's what the idea is. You put the thing in the pocket. You make like it's a gun. You say, hand me the money or I'll shoot. But nobody ever sees what's in the pocket. And it turns out it's a real gun. I think it's the same level of fear as a note, because there's no display of a weapon of any kind. So you think 2113 is limited to displayed weapons, and they can never be weapons that you're actually carrying but don't wave in the teller's face? Subsection D is limited to that. In Judge Posner's hypothetical, if I have a bomb and the person actually has a bomb, if he doesn't show the bomb to the teller, he can't be convicted under 2113D. I think that's the logical conclusion of what we're arguing. Yeah, it is. And the reason is the instilling of fear in the display. But there's nothing in 2113D to suggest display. You can put someone's life in jeopardy with a concealed weapon, like a ticking bomb, and that's squarely within 2113D. Right. I think that gets into the United States v. Wray case from the D.C. Circuit, where I believe it was a note without, no, he kept it concealed. That's where the display comes in, a reading in McLaughlin regarding the display that instills fear. And I do see that my time is up. Okay. Well, thank you, and thank the defenders. Thank you. And we definitely will, if the court desires supplemental briefing. Pardon? If that's ordered supplemental briefing, we will give it as soon as desired. Okay. Thank you very much, and thank you to Mr. Lecker. So our last case for argument, I think it's our last.